NESBITT *v.* ONAWAY-ALPENA TELEPHONE CO.

1. Trusts—Constructive Trusts—Fraud—Bona Fide Holder.
   Where an officer of a corporation by fraudulent artifice possessed himself of certificates of stock belonging to a woman lately bereaved and of limited business experience, a constructive trust arose as to such stock in the hands of the officer or any person not a *bona fide* holder.

2. SAME.

> Where certain shares of such stock were turned over to the corporation, the trust would follow it, in the absence of any evidence that it parted with anything of value for the same.

3. SAME—LACHES.

> *Held*, that the record does not disclose any unreasonable delay in bringing the action after discovery of the fraud.

Appeal from Branch; Knowlen, J. Submitted June 7, 1918. (Docket No. 84.) Decided July 18, 1918.

Bill by John S. Nesbitt, administrator of the estate of Warren D. Baker, deceased, against the Onaway-Alpena Telephone Company and others to establish the title to certain corporate stock. From a decree for plaintiff, defendant telephone company appeals. Affirmed.

*H. H. & B. E. Barlow*, for plaintiff.

*Henry & Henry*, for appellant.

BROOKE, J. Prior to the 13th day of March, 1913, 400 shares of stock of the Onaway-Alpena Telephone Co., a Michigan corporation, stood in the name of "Warren D. Baker or Martha E. Baker." The par value of said stock was $25. This stock, or the stock of the Onaway Telephone Company, which was exchanged share for share for this stock, was purchased by Warren D. Baker from M. T. Streeter about the year 1911. Mr. Streeter was vice president of the telephone company and active in the management of its affairs. On said 13th day of March, 1913, Warren D. Baker died, and about six weeks later, on April 30, 1913, said Streeter went to the home of Martha E. Baker, the widow of Warren D. Baker, and, after some negotiations with her, secured possession of said

stock certificates, giving her at the time the following papers:

$10,000.00        Union City, Mich., April 30, 1913.
"On or before one year after date, I promise to pay to the order of Martha E. Baker, Ten Thousand Dollars, interest at seven per cent. paid each six months, at Mrs. Baker's home.  Value received.
                                        "M. T. Streeter."

                    "Union City, April 30th, 1913.
"This agreement made this day between M. T. Streeter of Lansing, Michigan, party of the first part and Martha E. Baker of Union City, Michigan, party of the second part,
"Witnesseth: the said first party has given his note for ten thousand dollars to be paid on or before one year for Onaway-Alpena Telephone stock, to be handled and sold and turned into cash to take care of said note bearing even date herewith.
                                        "Morris T. Streeter."

Of this stock, 180 shares of the par value of $4,500 were, by Streeter, turned over to the telephone company.  The certificates of transfer being signed "Martha E. Baker, widow of Warren D. Baker," and indorsed across the face:   "Turned back and held as treasury stock."   Ninety-seven shares of such stock, said to be nonnegotiable, are outstanding in the name of Morris T. Streeter.   The remaining 123 shares were disposed of by Streeter to persons who paid valuable consideration and purchased without notice. Prior to the commencement of this action Martha E. Baker assigned to John S. Nesbitt, plaintiff herein, as administrator of her husband's estate, all the right, title, and interest in and to said certificates of stock. The bill was filed for the purpose of establishing the title to said stock in said Martha E. Baker.   She testified that her husband had paid for said stock $10,000 in cash; that Streeter had on various occasions offered to sell said stock for her husband and herself if

they desired to get their money back; that at the time she delivered said stock certificates to Streeter he represented to her that he would take the stock and have the certificates changed to certificates standing in her own name; that her understanding was that she was not making a sale of the stock to Streeter, but that she was turning it over to him as a representative of the company for the purpose indicated.

It is clear from the record that Streeter's management of the telephone company was irregular in many respects; that he had illegally withdrawn from the treasury of the company considerable money and had sold stock of the corporation in excess of that allowed by the Michigan railroad commission. In July, 1913, he was ousted from the management of the affairs of the corporation and later appears to have absconded from the State. An action brought by the company to recover from him sums wrongfully taken by him from it could not be prosecuted because he could not be found within the State. A perusal of the record convinces us that Streeter by fraudulent artifice possessed himself of the certificates of stock here in question, knowing that he was dealing with a woman lately bereaved and of limited business experience. Under the facts as disclosed by this record there is no question but that Streeter could have been compelled to return the stock to the person from whom he secured it without consideration. As to the 97 shares that precise situation exists. Touching the 180 shares delivered by Streeter to the telephone company, the learned circuit judge held that as to these shares there was no evidence of any consideration having passed from the telephone company to Streeter; that the telephone company was not a *bona fide* holder for value without notice and that therefore the same should be issued to the plaintiff herein. The defendant introduced no testimony in the case, but Charles S. Davis,

now president of the company, was called by plaintiff under the statute. The transaction between Streeter and the company occurred before Davis's incumbency of the office of president. He testified:

"I think it (the stock), was received into the company's hands to reimburse the company for money or stock that they had sold beyond what they had any right to sell."

We can find no evidence in the record that the company parted with anything of value to Streeter at the time of the delivery to it of the 180 shares of the Baker stock or even that Streeter was credited for the value of the same upon his indebtedness to the company which it is said was considerable at that time. We have no doubt that under the authorities a constructive trust arose as to this stock in the hands of Streeter and that such trust follows the stock in the hands of any person not a *bona fide* holder for value without notice. *Morris* v. *Vyse*, 154 Mich. 253, and *Weir* v. *Union Trust Co.*, 188 Mich. 452.

The claim is made on behalf of the appellant, the telephone company, that the failure of Mrs. Baker or her assignee, the administrator of her husband's estate, to act earlier should bar them from the relief sought. Streeter was ousted from the management of the corporation in July, 1913, and the bill of complaint in this case was filed September 26, 1914. Mrs. Baker testified that in the meantime she had endeavored to correspond with Mr. Streeter, but had failed to get into communication with him. The record does not disclose at what period she became aware of the fraud that had been practiced upon her. In any event the delay in starting the proceeding has apparently been of no disadvantage to the defendant telephone company. It has not changed its position in reliance upon her silence. While it is true that one defrauded must be active in disaffirming a contract obtained through

fraud and must not sleep upon his rights, we are unable to find from this record that there was any unreasonable delay in action after the fraud was discovered.

The decree is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.